**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| XUEHAI LI,<br><br>    Plaintiff,<br><br>v.<br><br>YUN ZHANG, *et al.*,<br><br>    Defendants. | Civil Action No. 22-891 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court on Defendant Yun Zhang's ("Defendant") Motion to Dismiss Plaintiff's Complaint. (ECF No. 7.) Plaintiff Xuehai Li ("Plaintiff") opposed (ECF No. 12), and Defendant replied (ECF No. 13).[1] The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court grants Defendant's Motion.

---

[1] The Court notes additional correspondence submitted by Defendant's counsel, which states that "[f]or purposes of the pending motion, please be advised that the undersigned represents all defendants." (*See* ECF No. 8.) The Court is unclear if this correspondence is a belated attempt by Defendant's counsel to seek dismissal as to all other defendants, and as such, without more, the Court is not inclined to *sua sponte* dismiss any other defendants at this time.

I.  **BACKGROUND**[2]

This financial dispute arises out of divorce proceedings between Plaintiff and Defendant. (*See* Compl. ¶ 1, ECF No. 1.) In June 2008, Plaintiff and Defendant were married in China, during which time Plaintiff owned multiple pieces of real property in China. (*Id.* ¶ 25.) Defendant also owned a condominium unit (the "Condo") in China. (*Id.*) In 2013, Plaintiff and Defendant moved to the United States and bought a house together the following year. (*Id.* ¶ 26.) Believing Defendant to have begun an extramarital romantic relationship with Benton Blake Camper, Jr. ("Camper"), who is also a defendant in this action, Plaintiff filed for divorce in March 2015 in New Jersey Superior Court. (*Id.* ¶¶ 28-29.) In July 2018, the Honorable Catherine M. Fitzpatrick, J.S.C. (ret.), ordered Defendant to produce an accounting for the net proceeds of the Condo, within ten days following its sale. (*Id.* ¶¶ 32-33.) The Condo was sold on July 17, 2018. (*Id.* ¶¶ 32-33.) The accounting for the net proceeds, which Plaintiff alleges Defendant belatedly produced in February 2020, shows that Defendant transferred the Condo's sale proceeds, in the total amount of approximately $581,465, from China to the U.S. through a series of wire transfers, including to Defendant's own U.S. bank account, from July to October 2018. (*Id.* ¶¶ 34-35.) The rest of the funds were distributed to either Camper or to other members of his family, some of whom are likewise named as defendants in this action. (*Id.* ¶¶ 6, 36.) Camper used the funds he received to buy a townhouse, which Plaintiff alleges that Defendant now occupies and retains title to. (*Id.* ¶¶ 37-39.) The NJ Superior Court issued the final divorce decree for Plaintiff and Defendant in August 2019. (*Id.* ¶ 30.)

---

[2] Because of the complicated history in this case, the Court recounts only certain facts it deems relevant, and includes a further explanation of the procedural history below. For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

The heart of the Complaint is Plaintiff's allegations that on several occasions throughout the divorce proceedings and beyond, Defendant misrepresented the state of her finances to the NJ Superior Court, which led Plaintiff to make a series of decisions he may not have otherwise made. (*Id.* ¶¶ 45-46.) Finding that numerous issues related to equitable distribution, alimony, and child support remained unresolved after the issuance of the divorce decree, Plaintiff and Defendant entered into a non-appealable, binding arbitration agreement (the "Arbitration Agreement"), with the Honorable Bradley Ferencz, J.S.C. (ret.), as the sole arbitrator (the "Arbitrator"), to resolve these issues. (*Id.* ¶¶ 30-31.) By that time, in mid-2019, Plaintiff had been making numerous financial payments to Defendant for over four years. (*Id.* ¶¶ 43-44.) Plaintiff maintains that he would not have entered into the Arbitration Agreement had he known the true nature of Defendant's financial condition as of mid-2019 and takes issue with the Arbitration Agreement's related consequences—most particularly, the Arbitrator's order compelling Plaintiff to pay $350,000 as a retainer for legal expenses for both Plaintiff and Defendant. (*Id.* ¶¶ 46-48.) Indeed, at the time, Plaintiff had moved for reconsideration of this order, explaining that he did not have a full picture of Defendant's finances and that Defendant sold the Condo for approximately $600,000, yet the Arbitrator rejected reconsideration in reliance on Defendant's alleged financial misrepresentations. (*Id.* ¶¶ 50-52.) Plaintiff alleges that his inability to pay the retainer within the requisite time led him to file bankruptcy and incur hundreds of thousands of dollars in legal fees. (*Id.* ¶ 55.)

Plaintiff brings the instant action alleging as follows: fraudulent concealment against Defendant (Count I); civil conspiracy against all Defendants (Count II); fraud against Defendant (Count III); and fraud on the Court against all Defendants (Count IV). (*Id.* 17-25.) Plaintiff seeks damages and injunctive relief. (*Id.* 25-26.)

Now before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] The Motion is ripe for resolution.

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the [C]ourt must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss for failure to state a claim, the "defendant bears the

---

[3] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

4

burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.  DISCUSSION

Defendant seeks dismissal on the basis that the Court lacks jurisdiction over this matter because it was fully adjudicated at the state level and is, thus, barred by the *Rooker-Feldman* Doctrine, *Younger* abstention, and the domestic relations exception to federal court jurisdiction. (Def.'s Moving Br. *2-*5, ECF No. 7-7.)[4] Defendant also seeks dismissal on the grounds that *res judicata* and collateral estoppel bar the Complaint. (*Id.* at *5.) Plaintiff responds that the Court has jurisdiction and that *res judicata* does not apply because Plaintiff's claims are different from those Plaintiff previously raised in state court. (*See* Pl.'s Opp'n Br. 11-26, ECF No. 12.) The Court disagrees with Plaintiff. The Court finds that dismissal is appropriate on preclusion grounds, so the Court declines to consider jurisdictional arguments at this time. *See Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191, 193 n.2 (3d Cir. 2014) (internal citation and quotation omitted) ("Because dismissal on *res judicata* grounds does not require us to reach the merits . . . we need not resolve the jurisdictional issue.").

"Under New Jersey law . . . 'when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation.'" *Farzan v. J.P. Morgan Chase Bank, N.A.*, No. 19-3925, 2022 WL 17336211, at *1 (3d Cir. Nov. 30, 2022). Preclusion involves several related concepts, including the entire controversy doctrine and *res judicata*. *See Reaves v. Monmouth Univ.*, No. 22-1782, 2022 WL 17722803, at *8 (D.N.J. Dec. 15, 2022); *Shieh v. Kim*, No. A-1698-21, 2023 WL 18506, at *2 (N.J. Super. Ct. App. Div. Jan. 3, 2023). "*Res judicata* encompasses two preclusion concepts—issue preclusion, which forecloses litigation of a

---

[4] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

litigated and decided matter, and claim preclusion (often referred to as direct or collateral estoppel), which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit." *Townsend v. N.J. Transit*, 516 F. App'x 110, 110-11 (3d Cir. 2013) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 (1984)). Specifically, *res judicata* "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990) (citing *United States v. Athlone Indust., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)).

Relatedly, the entire controversy doctrine "provides that non-joinder of claims or parties required to be joined . . . shall result in the preclusion of the omitted claims to the extent required . . . ." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 265 (3d Cir. 2004) (internal quotation marks and citation omitted). The doctrine has been described as "New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (citations omitted). "It is the 'commonality of facts,' rather than legal issues, parties or remedies, 'that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine.'" *See Tilbury v. Aames Home Loan*, No. 5-2033, 2005 WL 3477558, at *7 (D.N.J. Dec. 12, 2005), *aff'd*, 199 F. App'x 122 (3d Cir. 2006)) (quoting *DiTrolio v. Antiles*, 142 N.J. 253, 272 (1995)).

Here, the Complaint asserts essentially the same facts pertaining to Defendant's alleged financial misrepresentation on the Condo that Plaintiff has previously and exhaustively litigated,

6

to no avail, on multiple occasions.[5] As relevant context, the Court begins by detailing just some of the procedural history that the Court can glean from this lengthy and complicated case. Part of the procedural history commences in December 2020, with an unopposed order (the "Reconsideration Order") issued by the Superior Court of New Jersey—here, the Honorable Kay Walcott-Henderson, J.S.C. ("Judge Walcott-Henderson")—that granted Defendant's application to reconsider the court's prior order which had stayed proceedings pending the United States Bankruptcy Court for the District of New Jersey's ("Bankruptcy Court") resolution of certain other matters in the divorce proceedings, and ordered that the Arbitrator instead continue to "decid[e] all issues related to this matter," with results that were to be binding. (*See* Reconsideration Order *7, Ex. B, ECF No. 7-1.) Subsequently, on January 19, 2021, the Arbitrator heard lengthy oral argument pertaining to, *inter alia*, the financial status of the parties. (*See generally* Arb. Tr., Ex. C, ECF No. 7-1.) Relevant to this matter, in later correspondence to the Arbitrator on April 15, 2021, Plaintiff alleged that Defendant sold the Condo, transferred the sales proceeds via wire transfers, "concealed the availability of her funds by diverting the funds to . . . Camper, and concealed the money trail by wiring the money" to Camper and his family. (*See* Apr. 2021 Letter 25-27, 34 (Plaintiff further alleging that Defendant failed to provide a full accounting of the Condo's sale within ten days after its sale), 35 (Plaintiff opining that "[t]his is blatant misrepresentation of fact and abuse of the judicial process"), Ex. K, ECF No. 7-4.)

---

[5] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the Court finds that Plaintiff's claims are based on the documents attached as exhibits to Defendant's Motion. *See Reaves*, 2022 WL 17722803, at *6, *8 (relying on similar documents attached as exhibits to the motions to dismiss to evaluate defenses including *res judicata*, collateral estoppel, and the entire controversy doctrine).

On June 25, 2021, the Arbitrator published a 66-page opinion (the "Arbitrator's Opinion") that soundly considered and rejected these allegations, in addition to others. (*See generally* Arb. Op., Ex. B attached to Ex. D, ECF No. 7-2.) Specifically, the Arbitrator found that Plaintiff could "easily afford to post" the $350,000 that is, as detailed above, also one of Plaintiff's main disputes in this case, and that Plaintiff's bankruptcy filing "appears to have been for the purpose of . . . delay[ing] a final resolution." (*See id.* at 16-18.) On July 6, 2021, Judge Walcott-Henderson entered and enforced the Arbitrator's Opinion and accompanying order (the "Arbitration Award"). (*See generally* Arb. Award, Ex. D, ECF No. 7-2.)

Unhappy with this outcome, on October 29, 2021, Plaintiff responded with a brief to the NJ Superior Court in support of a motion for relief from the Reconsideration Order and to vacate the Arbitration Award. In this brief, Plaintiff again substantially made the same contentions that he now asserts in the Complaint in this action, including as follows:

> The truth of the matter is that [Defendant] sold her condo in China in July 2018 and immediately transferred the sales proceeds to the U[.]S[.] in several wire transfers between July and October 2018, in the total amount of approximately $581,465 dollars. Both this [c]ourt and [Plaintiff] fell victim to such lies. Relying on [Defendant]'s misrepresentation, this [c]ourt kept ordering [Plaintiff] to make payments to [Defendant], which drained [Plaintiff]'s financial resources and helped push him into bankruptcy.

(*See* Pl.'s NJ Sup. Ct. Br. 4, 29, Ex. L, ECF No. 7-4; *cf.* Compl. ¶¶ 3-13.) Meanwhile, in an opinion issued a few months later, on December 8, 2021 (the "December 8 Bankruptcy Opinion"), the Bankruptcy Court denied a related motion by Plaintiff, filed months earlier, to vacate four orders that had been entered in the underlying bankruptcy dispute and to challenge the Arbitration Agreement; in doing so, the Bankruptcy Court made clear its displeasure with Plaintiff's various litigious efforts. (*See* Dec. 8 Bankr. Op. 1, 32 ("It is my understanding that [Plaintiff] has filed a motion to vacate the [a]rbitration [d]ecision in the state court and is contemplating filing a similar

8

motion here. Such duplicative filings would be a waste of the resources of the state court, this [c]ourt, and the parties."), Ex. E, ECF No. 7-2.) The Complaint in this case followed on February 18, 2022. (*See generally* Compl.)

Thereafter, on March 25, 2022, in a 31-page opinion that affirmed the Arbitration Award and detailed some of this same procedural history, Judge Walcott-Henderson considered and denied Plaintiff's aforementioned application for an order granting relief from the Reconsideration Order and to vacate the Arbitration Award; this was thus another rejection of the same claims Plaintiff now asserts in this action. (*See* Sup. Ct. Op., Ex. F., ECF No. 7-3.) Plaintiff subsequently filed a notice of appeal to the Appellate Division of the New Jersey Superior Court. (*See* Ex. G, ECF No. 7-3.)

With respect to the bankruptcy matter, in another lengthy decision issued on May 13, 2022 (the "May 13 Bankruptcy Opinion"), the Bankruptcy Court denied another motion filed by Plaintiff to reconsider its prior ruling denying Plaintiff's motion to vacate the December 8 Bankruptcy Opinion. (*See generally* May 13 Bankr. Op., Ex. I, ECF No. 7-3.) There, the Bankruptcy Court specifically refused to disturb the findings made by Judge Walcott-Henderson: "While this [c]ourt may have some independent jurisdiction over the equitable distribution portion of the arbitration, [Plaintiff] has presented nothing in the record which would lead me to depart from any of the factual findings or legal conclusion[s] made by the state court." (*Id.* at 6-7.) Thus, once more, Plaintiff's efforts to undermine the Arbitration Agreement and its consequences failed. (*See generally id.*) Unsurprisingly, Plaintiff subsequently filed an appeal of both the December 8 Bankruptcy Opinion and the May 13 Bankruptcy Opinion. (*See* Ex. J, ECF No. 7-4.) In sum, at almost every step of the way, courts have rejected Plaintiff's efforts to challenge the various outcomes stemming from his divorce proceedings.

This Court dismisses Plaintiff's claims against Defendant based on principles of preclusion because Plaintiff asserts the same claims against the same party (Defendant) which have already been litigated and resolved by numerous other courts. *See Farzan*, 2022 WL 17336211, at *1 (explaining the Third Circuit refused to reconsider allegations that the plaintiff already raised in a related action due to preclusion). As detailed above, the Complaint asserts essentially the same allegations unsuccessfully made before the Arbitrator and Judge Walcott-Henderson—arguments that the Bankruptcy Court also refused to fully reconsider. In any event, any differences between Plaintiff's claims in this action and those previously adjudicated would be barred by New Jersey's entire controversy doctrine. *See id.* at *2.

The Court, accordingly, grants Defendant's Motion to Dismiss because Plaintiff's claims are barred by both the rules of preclusion and the entire controversy doctrine.[6]

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion. An appropriate order will follow.

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[6] Defendant also seeks to impose Rule 11 sanctions. (*See* Rule 11 Cert., ECF No. 7-5.) Given that this is Plaintiff's first time in this action before this Court, the Court declines Defendant's request at this time. *Cf. Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 594 (D.N.J. 2003), *aff'd*, 137 F. App'x 482 (3d Cir. 2005) (imposing Rule 11 sanctions where the plaintiff "blatantly disregarded" the Court's warning that, should the plaintiff move for leave to amend the complaint, the Court would "carefully scrutinize" it to determine if the plaintiff "was merely attempting to relitigate claims brought unsuccessfully in state court").